IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DALE D. REEVES                                                                                          PLAINTIFF

      v.                                     CIVIL NO. 2:17-CV-2185

NANCY A. BERRYHILL,[1] Acting Commissioner,
Social Security Administration                                                                   DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

      Plaintiff, Dale D. Reeves, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

      Plaintiff protectively filed his current application for DIB on January 9, 2015, alleging an inability to work since February 21, 2014, due to degenerative disc disease and bipolar disorder. (Tr. 76, 90). For DIB purposes, Plaintiff maintained insured status through December 31, 2019. (Tr. 76, 90). An administrative hearing was held on May 24, 2016, at

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

1

which Plaintiff appeared with counsel and testified. (Tr. 44-74). Deborah Steele, Vocational Expert (VE) also testified. (Tr. 44-74).

In a written opinion dated July 27, 2016, the ALJ found that the Plaintiff had a severe impairment of degenerative disc disease. (Tr. 32). However, after reviewing the evidence in its entirety, the ALJ determined that the Plaintiff's impairments did not meet or equal the level of severity of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). (Tr. 34). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work, except that Plaintiff could occasionally stoop, crouch, kneel, climb and crawl. (Tr. 35-37). With the help of VE testimony, the ALJ determined that Plaintiff was unable to perform his past relevant work as a molder, molding and trim installer, automotive worker, automotive detailer, and car wash supervisor. (Tr. 37). However, based on the Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff was capable of work as a bottling line attendant, a bindery machine feeder, and a plastic hospital products assembler. (Tr. 38). Ultimately, the ALJ concluded that the Plaintiff had not been under a disability within the meaning of the Social Security Act from February 21, 2014, through the date of the decision. (Tr. 38).

Subsequently, Plaintiff requested a review of the hearing decision by the Appeals Council, which after reviewing additional evidence submitted by the Plaintiff, denied that request on August 25, 2017. (Tr. 1-6). Plaintiff filed a Petition for Judicial Review of the matter on October 5, 2017. (Doc. 1). Both parties have submitted briefs, and this case is before the undersigned for report and recommendation. (Docs. 14, 15).

The Court has reviewed the transcript in its entirety. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## II. Evidence Submitted:

At the hearing before the ALJ on May 24, 2016, Plaintiff testified that he was born in 1964 and had obtained his GED. (Tr. 47). Plaintiff's past relevant work consisted of work as a molder, a molding and trim installer, an automotive worker, an automobile detailer, and a car wash supervisor. (Tr. 63).

Prior to the relevant time period, from August 28, 2007, through January 30, 2008, Plaintiff was treated for anger issues by Dr. Richard Barrett, II, Ph.D. (Tr. 525-527, 529-530, 536-546). On October 29, 2007, Dr. Barrett, authored a letter, stating that Plaintiff was experiencing symptoms consistent with bipolar disorder with episodic psychotic features. (Tr. 524). Dr. Barrett recommended a mood stabilizer and that Plaintiff follow up with a psychiatrist. (Tr. 524). Moreover, between May of 2013 and January of 2014, Plaintiff was treated conservatively for low back pain and was diagnosed with an umbilical hernia. (Tr. 278-279, 296-297, 348, 350-351, 387, 397, 414, 418, 435, 452-453).

Medical evidence during the relevant time period reflects that on March 31, 2014, Plaintiff visited UAMS Family Medical Center Fort Smith to establish care and with complaints of a ventral hernia. (Tr. 310). Dr. Lyndsey Kramp referred Plaintiff to surgery for the hernia. (Tr. 313).

On April 23, 2014, Plaintiff presented at Mercy Surgery and Gastroenterology Clinic with complaints of an umbilical hernia. (Tr. 282). Dr. Nabil Akkad opined that Plaintiff would benefit from hernia repair with mesh placement. (Tr. 283). On that same date, Plaintiff also

3

visited Arkansas Surgical Group, where Plaintiff was scheduled for surgery and pre-operative instructions were given. (Tr. 343-344).

On July 3, 2014, Plaintiff underwent an open repair of his umbilical ventral hernia. (Tr. 317).

On July 17, 2014, Plaintiff visited Arkansas Surgical Group for a follow up from surgery. (Tr. 341). Plaintiff reported that he was doing well with minimal abdominal soreness, and he denied fever, chills, and pain. (Tr. 341). Plaintiff was instructed to keep the incision clean and dry and to notify the clinic of any problems. (Tr. 342).

On August 7, 2014, Plaintiff returned to Arkansas Surgical Group for a follow up from surgery. (Tr. 339). Plaintiff was ordered to continue to follow lifting restrictions and that no further follow up was necessary. (Tr. 340).

On September 3, 2014, imaging of Plaintiff's lumbar spine showed mild disc space narrowing at L4-5, marked disc space narrowing at L5-S1 compatible with degenerative disc disease, and degenerative facet changes in the lower lumbar segments. (Tr. 323). Plaintiff also visited UAMS Family Medical Center that day for low back pain. (Tr. 590). Clinic notes indicated that a lumbar x-ray would be ordered and that Plaintiff would start conservative management. (Tr. 591).

On September 9, 2014, Plaintiff returned to UAMS Family Medical Center in Fort Smith with complaints of low back pain. (Tr. 319). Upon examination, Plaintiff had normal gait and station, no hot, red, or tender joints, and no obvious deformities, dislocation or fracture. (Tr. 320). Clinic notes indicated that Plaintiff would begin conservative treatment,

including heat, medication, modified activity, stretching/strengthening exercises, and would have a repeat x-ray of his lumbar spine. (Tr. 321).

On September 22, 2014, Plaintiff had a follow up visit at UAMS Family Medical Center in Fort Smith for back pain. Plaintiff reported that conservative treatment had not offered much relief and that his pain was impacting his job. (Tr. 324). Upon physical examination, Plaintiff had normal gait and station, no tenderness in his joints, and no obvious deformity, dislocation or fracture. (Tr. 325). Plaintiff had some positive findings on his lumbar exam and a MRI was ordered. He was assessed with degenerative disc disease, lumbar spine, and his medication was altered. (Tr. 326).

On October 6, 2014, Plaintiff presented at UAMS Family Medical Center in Fort Smith for a follow up visit for his back pain. (Tr. 328). A re-order was made for a MRI on Plaintiff's spine. (Tr. 330).

On November 20, 2014, Plaintiff presented at UAMS Family Medical Center in Fort Smith for a follow up visit for his back pain. (Tr. 331). Dr. Tabasum Imran recommended that Plaintiff continue to limit activity, continue heat or ice on his back, take his medication as instructed, and start physical therapy. (Tr. 334). Clinic notes indicated that "(90%) of patients with low back pain will improve with time (2-6 weeks)." (Tr. 334).

On December 4, 2014, Plaintiff saw Dr. Thomas Cheyne for chronic low back pain, bilateral hip and bilateral thigh pain and numbness, which was worse on the right than the left. (Tr. 290). Plaintiff reported having undergone physical therapy and had taken naproxen and ibuprofen for weeks with no relief. (Tr. 290). Upon examination, Plaintiff's gait was normal; he had normal strength and muscle tone in his arms; he could walk on toes and heels without

difficulty; he had good strength and muscle tone in his legs; his straight-leg raise was negative bilaterally; and he had full range of motion and no pain in his hips, knees, and ankles. (Tr. 289). Dr. Cheyne determined that Plaintiff had chronic sciatica bilaterally with underlying severe degenerative disc disease at L5-S1. (Tr. 289). Dr. Cheyne instructed him to take Mobic, stay at light activity, and use heat twice a day. He also ordered a MRI on his lumbar spine. (Tr. 289). An x-ray of Plaintiff's lumbar spine on that day showed severe degenerative disc disease at L5-S1, but was otherwise unremarkable. (Tr. 291). Plaintiff also underwent an x-ray of his pelvis that day, which yielded normal results. (Tr. 293).

A January 13, 2015, patient appointment list showed that Plaintiff received physical therapy on the following dates: November 24, 2014, December 1, 2014, December 3, 2014, December 5, 2014, December 8, 2014, December 10, 2014, December 12, 2014, December 15, 2014, December 17, 2014, December 19, 2014, December 31, 2014, and January 2, 2015. (Tr. 287).

On February 20, 2015, Plaintiff underwent a MRI on his lumbar spine, which showed multilevel degenerative disc disease and facet arthropathy; focal right paracentral disc protrusion L4-5, with the disc protruding 4 to 5 mm, which may have slight contact with the passing right L5 nerve root, with no significant central canal stenosis; and mild broad disc protrusion and dorsal bony ridging L5-S1 without spinal canal or foraminal stenosis. (Tr. 285).

On February 25, 2015, Plaintiff returned to Dr. Cheyne for a discussion of his MRI results. Dr. Cheyne's noted indicated that Plaintiff did not need surgery, but rather he should continue light activity, use heat, continue his medication, and undergo an epidural steroid injection. (Tr. 474).

On March 11, 2015, Plaintiff received a lumbar epidural steroid injection administered by Dr. Brian Goodman. (Tr. 354-356).

On March 25, 2015, Plaintiff had a follow up appointment with Dr. Cheyne after his injection. Plaintiff reported that the injection did not provide any relief. (Tr. 476). Dr. Cheyne recommended physical therapy three times per week and two additional steroid injections. (Tr. 476).

On April 2, 2015, Plaintiff presented at Mercy Therapy Services for a Therapy Evaluation. (Tr. 362).

On April 15, 2015, Plaintiff received an additional lumbar steroid injection administered by Dr. Goodman. (Tr. 358).

On April 7, 2015, April 9, 2015, April 20, 2015, April 22, 2015, and April 24, 2015, Plaintiff underwent physical therapy on his lumbar spine. (Tr. 367, 370, 373, 509, 512).

On April 29, 2015, Plaintiff returned to Dr. Cheyne for a follow up on his back pain. Dr. Cheyne's clinic notes indicated that Plaintiff had not had his repeat steroid injections, that Plaintiff had one scheduled for May, and that Plaintiff had gotten a little relief from the last injection. (Tr. 478).

On May 20, 2015, Plaintiff received an epidural steroid injection administered by Dr. Goodman. (Tr. 494).

On June 3, 2015, Plaintiff had a follow up appointment with Dr. Cheyne and reported improvement after the third steroid injection. (Tr. 480). Dr. Cheyne recommended he stay at

light work, continue his medication and heat, and obtain two additional steroid injections. (Tr. 480).

On August 27, 2015, Plaintiff was treated by Dr. Wallace Lock UAMS Family Medical Center for his ingrown toenail. (Tr. 575).

On September 4, 2015, Plaintiff received an addition epidural steroid injection. (Tr. 498).

On September 14, 2015, Plaintiff underwent a Mental Diagnostic Evaluation by Dr. Terry Efird, Ph.D. (Tr. 455). During the evaluation, Plaintiff reported difficulty with anger, mood swings, and bipolar disorder symptoms. Plaintiff also reported trouble sleeping, feelings of worthlessness, and problems concentrating and making decisions. (Tr. 455). Plaintiff denied any history of inpatient treatment, but he reported that he had undergone outpatient mental health services through WACG. He reported having last seen a mental health professional approximately seven years ago and that he was not currently on any psychiatric medication. (Tr. 455). Plaintiff endorsed the ability to perform basic self-care tasks independently and the ability to perform household chores adequately. (Tr. 456). Plaintiff also reported going to church weekly and getting his grandson on the weekends. (Tr. 458). Dr. Efird assessed Plaintiff with depressive disorder and anxiety disorder. (Tr. 457). In sum, Dr. Efird found the following: Plaintiff could drive unfamiliar routes, had the ability to shop independently, had the ability to handle personal finances adequately, and had the ability to perform most ADL's adequately. (Tr. 458). Plaintiff communicated and interacted in a fairly basic, but reasonably socially adequate matter; he communicated in a fairly basic, but reasonably intelligible and effective manner; he had the capacity to perform basic cognitive tasks required for basic work-

like activities; he appeared to be able to track and respond adequately for purposes of the evaluation; he generally completed most tasks during the evaluation; and he appeared to be capable of performing basic work-like tasks within a reasonable time frame. (Tr. 458).

On September 17, 2015, Dr. Nick Rios, Psy.D, completed a Psychiatric Review Technique, finding that there was no evidence of significant mental/cognitive impairment for occupational purposes. (Tr. 84). On that same date, Dr. Lucy Saur completed a Physical RFC Assessment, where she opined that Plaintiff was capable of light work. (Tr. 86).

On September 23, 2015, Plaintiff saw Dr. Lock for issues with his right great toenail and some complaints of intermittent gout flare-up. (Tr. 571). Plaintiff underwent a procedure on his toe and was given prescription medication. (Tr. 573).

On October 28, 2015, Plaintiff saw Dr. Lock for a follow up visit, where Plaintiff reported concerns with his anger and anxiety. (Tr. 565). Notes also included chronic back pain. (Tr. 565). Notes also indicated that Plaintiff saw Elizabeth Petray, LCSW, at UAMS Family Medical Center that day for the anger and anxiety symptoms. (Tr. 568).

On November 3, 2015, Plaintiff saw Ms. Petray again for his anger issues. (Tr. 561). He was assessed with generalized anxiety disorder and depression. He was instructed to practice relaxation breathing, practice guided imagery nightly at bedtime, consider walking three to four times per week for twenty minutes. (Tr. 562). Clinic notes indicated that Plaintiff would have a hard time following through with behavior change and did not feel like he would stick with any plan outside of medication. (Tr. 562).

On November 11, 2015, Plaintiff saw Dr. Lock for a pre-op colon screen. (Tr. 557).

On November 18, 2015, Plaintiff saw Dr. Lock for complaints of anxiety. Plaintiff agreed to behavioral therapy and medication. (Tr. 554).

On November 24, 2015, Dr. Kay M. Gale completed Psychiatric Review Technique, where she found that Plaintiff's mental impairments were not severe. (Tr. 98). On that same date, Dr. Rosey Seguin completed a Physical RFC Assessment, where she affirmed Dr. Saur's assessment of light work. (Tr. 100-101).

On December 18, 2015, Plaintiff saw Ms. Petray again for complaints of anger. (Tr. 547). Clinic notes indicated that Plaintiff was not feeling any better overall; that he had been on Cymbalta for one month with no improvement in mood or pain; that Plaintiff continued to get irritated at people; that his pain level was still high; that he had not tried any of the relaxation techniques that had been discussed; and that he was frustrated. (Tr. 547). Plaintiff was assessed with generalized anxiety disorder and depression, which caused him to have anger issues and poor impulse control of his temper. (Tr. 547). Plaintiff was instructed to go to the park at least four times per week and walk for twenty minutes to help with depression and chronic pain, and he was instructed to use deep breathing techniques when he felt stressed and angry at others. (Tr. 548). On that same day, Plaintiff saw Dr. Lock for a follow-up visit for his depression; Dr. Lock's notes indicated that Plaintiff was taking his medications as prescribed. (Tr. 550).

On March 24, 2016, Plaintiff saw Dr. Lock for his back pain. (Tr. 603). Plaintiff was assessed with fatigue and degenerative disc disease of the lumbar spine. (Tr. 605). Examination revealed tenderness over the L5-S1 area and limited range of motion secondary to pain. (Tr. 606). Plaintiff was given medication and old records were ordered. (Tr. 605).

**III.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(C).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520.

**IV.** **Discussion:**

Plaintiff makes the following arguments on appeal: 1) the ALJ erred in his Step Two determination; 2) the ALJ erred in his evaluation of Plaintiff's subjective complaints; 3) the ALJ erred in his RFC determination; and 4) the ALJ erred in his Step Five determination. (Doc. 11, pp. 2-8).

**A.** **Plaintiff's Impairments:**

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C.F.R. § 404.1520(c). While "severity is not an onerous requirement for the claimant to meet . . . it is also not a toothless standard." Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (citations omitted). To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security Ruling 96-3p. The claimant has the burden of proof of showing

he suffers from a medically-severe impairment at Step Two.  See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000).

While the ALJ did not find all of Plaintiff's alleged impairments to be severe impairments, the ALJ specifically discussed the alleged impairments in the decision, and clearly stated that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe.  See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir. 2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify a particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012); see also 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe'"); § 416.923 (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

Plaintiff alleges that the ALJ erred by "inexplicably" failing to discuss all the evidence related to Plaintiff's mental health.  While the ALJ may not have discussed every piece of evidence regarding Plaintiff's alleged mental impairment, the record clearly shows that the majority of the evidence regarding Plaintiff's mental health was in 2007 and early 2008, well before the relevant time period.  As it relates to the evidence during the relevant time period, the record also clearly shows that the ALJ considered all the evidence before him.  Though the ALJ may not have mentioned each particular fact that he relied upon when making his decision, "an ALJ's failure to cite specific evidence does not indicate that it was not considered."  England v. Astrue, 490 F.3d 1017, 1022 (8th Cir. 2007).

13

After review, the Court finds that the ALJ did not commit reversible error in setting forth Plaintiff's severe impairments during the relevant time period.

### C. Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. In addressing Plaintiff's credibility, the ALJ noted Plaintiff's claims that he was unable to work due to his back pain; that he was unable to stand and rise from a seated position; that he experienced pain radiating into his lower extremities; that he was able to sit for thirty minutes before needing to get up and stand; that he could stand for fifteen minutes; that he could walk for twenty to thirty feet; and that he was unable to lift five or ten pounds throughout the day due to an exacerbation of pain in his hands. (Tr. 35). However, in a Function Report, Plaintiff stated that he helped care for his mother, who was on hospice; that he cared for his pets; and that he had no problem with personal care, except for some pain when pulling up his pants, some difficulty tying his shoes, some difficulty washing his back and feet, and some difficulty cleaning himself after

using the toilet. (Tr. 211). Plaintiff also reported that while he lived with his sister, he prepared his own meals, he cleaned his room, he did his own laundry, he did not need help or encouragement, he went outside daily to check the mail and get the newspaper, he could drive and ride in a car, he could go out alone, he could shop in stores for food, and he could count change. (Tr. 212-213). Plaintiff stated that his hobbies were reading and watching television; that he spent time with others; that he visited his family three to four times per week; that he went to church or to small group meetings with church members three times per week; and that he needed no reminders and no one accompany him. (Tr. 214). Plaintiff reported no trouble getting along with others; that he had no trouble paying attention; that he could finish what he started; and that he could follow written and spoken instructions well. (Tr. 215).

With respect to Plaintiff's alleged physical impairments, the record demonstrates that Plaintiff was treated conservatively with medication, lumbar epidural steroid injections, and physical therapy for his low back pain. See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). Moreover, the record demonstrated that Plaintiff had some improvement of his symptoms. Impairments that can be controlled with treatment or medication are not disabling. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (holding that an impairment controllable with treatment or medication is not considered disabling).

With respect to Plaintiff's alleged mental impairments, the record demonstrates that the majority of Plaintiff's mental health treatment was in October through December of 2007 and January of 2008, well before the relevant time period. Moreover, during the relevant time period, there was minimal evidence regarding his depression or anxiety, in that Plaintiff only complained of and/or received medication for anger issues and anxiety on four occasions

between October 28, 2015 and December 18, 2015. (Tr. 547, 550, 554, 561, 565, 568). There was no further treatment during the relevant time period. A record of minimal medical treatment is inconsistent with Plaintiff's subjective complaints. See Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) (a claimant's subjective allegations may be discredited by evidence they have received minimal medical treatment and/or has taken only occasional pain medications); see Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (failing to seek medical assistance for alleged physical and mental impairments contradicted claimant's allegations of disabling conditions and supported unfavorable decision).

Although it is clear that Plaintiff suffers some degree of limitation, he has not established that he is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**D.  ALJ's RFC Determination:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart,

16

353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In finding Plaintiff able to perform light work with only occasional stooping, crouching, kneeling, climbing and crawling, the ALJ considered Plaintiff's subjective complaints, the medical records of his treating and examining physicians, and the evaluations of the non-examining medical providers. Plaintiff's capacity to perform this level of work is supported by the fact that Plaintiff's back condition was treated conservatively with medication, injections, and physical therapy. The ALJ specifically noted a December 2014 x-ray of Plaintiff's lumbar spine showing severe degenerative disc disease at L5-S1. (Tr. 36, 291). The ALJ also specifically noted imaging from February of 2015 that showed multilevel degenerative disc disease and facet arthropathy; focal right paracentral disc protrusion at L4-5; no central canal stenosis; and mild broad disc protrusion and dorsal bony ridging at L5-S1 without spinal canal foraminal stenosis. (Tr. 36, 285). During Plaintiff's first visit to Dr. Thomas Cheyne at Mercy Sports Medicine Clinic, clinic notes reveal that Plaintiff's gait was normal; he had normal strength and muscle tone in his arms; he had a negative straight-leg raise test; and he had full range of motion and no pain in his hips, knees, and ankles. (Tr. 289). Dr. Cheyne recommended medication, light activity, and heat twice a day for his back pain. (Tr. 289). At follow up appointments with Dr. Cheyne, he continued to recommend conservative treatment, including additional steroid injections and physical therapy. (Tr. 474, 476, 478, 480). On February 25, 2015, Dr. Cheyne specifically noted that Plaintiff did not need surgery but should continue conservative treatment as prescribed. (Tr. 474). On June 3, 2015, when Plaintiff last saw Dr. Cheyne, Plaintiff reported improvement after his third steroid injection. (Tr. 480). It was not until March of 2016, when Plaintiff saw another physician for

his back pain, that Dr. Lock's notes indicated tenderness over the L5-S1 area and limited range of motion secondary to pain; yet, he was again treated conservatively. (Tr. 605-696).

The ALJ afforded Dr. Cheyne's opinion great weight, as he was a treating physician and his opinion was consistent with the overall evidence of record. He also gave great weight to the opinions of the non-examining medical consultants, Drs. Lucy Sauer and Rosey Seguin, who reviewed the medical record and opined that Plaintiff was capable of light work. (Tr. 86, 100-101). Nevertheless, the ALJ concluded that based on the medical record, Plaintiff was more limited physically, which is reflected in his RFC determination. (Tr. 37).

Upon careful review of the record, the Court finds that there was substantial evidence to support the ALJ's RFC determination of light work with occasional stooping, crouching, kneeling, climbing, and crawling.

### E. Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a bottling line attendant, a bindery machine feeder, or a plastic hospital products assembler. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

V.   **Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 21st day of November, 2018.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE